## HURLEY *vs.* VAN WAGNER.

An action will lie to recover compensation for services rendered to another, under a contract, in putting up and taking down a tent, used by the employer as a place for holding public meetings of the political friends of a particular candidate for the presidency, during the canvass preceding a presidential election.

The case of *Jackson* v. *Walker*, (5 *Hill*, 27,) should not be extended beyond the circumstances out of which it arose.

APPEAL from a judgment of the county court of Dutchess county. The action was brought to recover the value of the services of one James Murgatroyd, performed by him for the defendant, and for disbursements. The claim had been duly assigned to the plaintiff, by Murgatroyd. The action was tried before a justice of the peace. From the evidence given on the trial, it appeared that during the summer and a part of the fall of 1856, the defendant was traveling about the country with a large tent, engaged in delivering lectures in behalf of the republican party, and in favor of the election of John C. Fremont to the office of president of the United States, and in giving political concerts. That Murgatroyd was employed by the defendant at $15 per month, and the defendant was to furnish him with board and lodging. Murgatroyd, the only witness sworn upon the trial, testified, "that the bargain between himself and defendant was made at Newburgh. Defendant hired me to help take tent down and put it up. The tent was used for political lectures. All the work I did was taking down and putting up the tent, and putting it on the wagon, and going with him. I thought, when I hired to him, that the work I was to do was to go with him in the political campaign and assist him in that campaign. The lectures were in favor of the election of Fremont to the presidency. I hired to work for him from June 9th to Nov. 4th. My contract was to work through the whole campaign. Van Wagner told me if I could not stay with him through the whole campaign, he did not want me. I quit before my time was out, because he had no more work for me. He trav-

eled in this state and the state of Maine. Van Wagner took up some collections at the meetings. He came back here about two weeks before the election. The collections were all taken up at the political meetings and political concerts." He commenced work June 9th, 1856, and continued in defendant's service four months and two weeks, and expended money for his board and lodging while engaged in his work, which defendant had not paid. The amount due the plaintiff was not contested. The only defense made was, that the plaintiff was not entitled to recover by reason of the provisions of the act "to preserve the purity of elections."

The justice rendered a judgment in favor of the plaintiff for $41.75, the balance due on the account, besides costs; and the defendant appealed to the county court. That court affirmed the judgment.

*Doty & Storrs*, for the appellant. The contract is made illegal by statute, and is therefore void, and the plaintiff cannot recover. (1 *R. S.* 363, 4*th ed.*) The statute, (sub. 5, § 6,) expressly forbids any person paying money, except for printing, and the circulation of votes, handbills, and other papers. The act done in this case is not among the exceptions, and is therefore forbidden, and the doing of which is made a crime punishable with fine and imprisonment. The assignor undertook to do an act which, although he had a perfect right to do, yet so far as the law is concerned he must do voluntarily. The courts will not aid him in enforcing a contract for such a purpose. The act being forbidden as to one party must be so as to both, necessarily. It, matters not how "*moral or honorable*" the assignor may have been, neither to what party he belonged; if he has contracted to do that which the law declares a man shall not pay money for, then he must bear the loss, if any there be. He cannot invoke the aid of a court to help him out of his difficulty, by lightly construing a wise and necessary statute. In the language of Judge Bronson, in the case of *Jackson* v. *Walker : "The parties intended to accomplish the very thing*

Hurley *v.* Van Wagner.

*which the statute declares to be illegal. No man can wink so hard as not to see it,"* &c. The case in the 5th of Hill has more equity to support it than this. It is a stronger case. But in that case Judge Bronson said: *"I will not discuss the policy of the law. The legislature have said the thing shall not be done, and that is enough."* (*Jackson* v. *Walker,* 5 *Hill,* 27.)

*L. B. Sackett,* for the plaintiff. The defendant claims that his contract to pay for the services mentioned in the complaint is illegal. That it was made in violation of the statute "to preserve the purity of elections." The contract as it appears in evidence is but the ordinary one for labor and services. It does not appear that Murgatroyd was hired for the purpose of promoting the election of any one, or that he did any thing with that object. His contract, therefore, is legal. In the case of *Jackson* v. *Walker,* (5 *Hill,* 27,) Walker agreed to keep open his log cabin for the use of the whig party until after the election, and it was kept open to promote the election of General Harrison and members of congress; this intent was set forth in the complaint and proved upon the trial, so that the payment of the $1,000 would have been a direct contribution for that object.

II. The object of the statute is to preserve the purity of the elective franchise. It is not applicable to a case like this, where a man employs a servant or waiter for his own personal ease or convenience. There is no necessary connection between the work to be performed and the election of any one. (*See* 1 *Bos. & Pul.* 587; 6 *Curtis U. S.* 587.)

III. There being evidence from which the justice might have inferred that the defendant's speeches were delivered for the profits which he received from the collections taken up at the meetings, rather than for the purpose of promoting the election of any one, the finding of the justice should not be disturbed by an appellate court.

IV. The presumption of law is in favor of the legality of a

Hurley *v.* Van Wagner.

contract, and therefore if it be reasonably susceptible of two meanings—one legal and the other not—that interpretation should be put upon it which will support and give it operation. (*Chitty on Cont.* 571.)

*By the Court,* Brown, J.   This court decided in *Jackson* v. *Walker*, (5 *Hill*, 27,) that a contract to pay for the use of a log cabin to be used, and which was used, during an election canvass, to promote the success of a particular candidate or ticket, was within the prohibitions of the act in regard to penalties for misconduct at elections, (1 *R. S.* 362, 4*th ed.*,) and could not be enforced.   The decision must be regarded as the law of this court, but it should not be extended beyond the circumstances out of which it arose ; for, notwithstanding the acknowledged ability of the judge who delivered the opinion, it is hardly possible to reconcile it with the spirit or the letter of the statute of which it is an exposition.   The present action is not brought to recover the rent of a building or room used for the purpose of promoting the election of a particular candidate or ticket.   It is brought to recover compensation for services rendered by one James Murgatroyd, the plaintiff's assignor, to the defendant in putting up and taking down a large tent used by him as a place of public meeting for the political friends of John C. Fremont, during the election of 1856.   The services or consideration for the defendant's promise is thus one remove further from the election than the consideration for the promise in the case of *Jackson* v. *Walker.* There must be a limitation of the various cases to which the statute might be supposed to apply ; for it would be absurd, I think, to say that a promise to pay for any service, or for any article furnished, such as room rent, board, carriage hire, rail road or steam boat fare, which might indirectly tend to promote the election of a particular candidate, is forbidden by the statute.

Section 6 of the act referred to declares it to be unlawful for any candidate for an elective office, with intent to promote

Hurley *v.* Van Wagner.

his election, or for any other person with intent to promote the election of any such candidate, 1. To provide or furnish entertainment at his expense, to any meeting of electors previous to or during the election at which he shall be a candidate; or 2. To pay for, or procure or engage to pay for, any such entertainment; or 3. To furnish any money or other property to any person for the purpose of being expended in procuring the attendance of voters at the polls; or 4. To engage to pay any money, or deliver any property, or otherwise compensate any person for procuring the attendance of voters at the polls: or, 5. To contribute money for any other purpose intended to promote an election of any particular person or ticket, except for defraying the expenses of printing and the circulation of votes, handbills and other papers previous to any such election." It is not claimed or thought that the money to be paid for the services rendered by Murgatroyd, in putting up and taking down the defendant's tent, falls within either of the four first enumerated cases, but it is thought to be within the prohibition of the fifth enumerated class. According to the construction claimed by the defendant, money paid for services rendered, goods or any thing else furnished for a purpose not mentioned under either of the four first heads and not within the exception of the 5th, and which may tend to promote the election of a particular person or ticket, is a contribution of money within the meaning of the act. A person who pays money for his board, or rail road or steam boat fare while going to or from a political meeting; or who pays for the use of a room for such meetings, or for the lights or attendance thereat, in one sense contributes money to promote the election of a particular ticket or candidate. But is it a contribution of money in the sense intended by the act? Did the legislature intend to prohibit, and punish as a misdemeanor, every expenditure of money which might indirectly promote, or be intended to promote, the election of particular candidates? Public meetings, large assemblies of the people, constant and almost universal intercommunication, one with another, and journeys from one part of

the country to another, are the usual and customary means by which the election of particular candidates is secured, and they necessarily involve the expenditure of large sums of money, which may be said to be contributed. Is this the evil that the act was designed to suppress? If it was, it may be safely said to have utterly failed of its object; for during the twenty-nine years it has been upon the statute book, hardly an attempt has been made to enforce it; and the evil practice, if it be one, has gone on and gained additional strength with each additional year.

I therefore infer that these are not the contributions in money forbidden by the act. That its provisions were designed to prohibit contributions in money to a common fund to be expended for election purposes, and which might be employed by unscrupulous men to demoralize and corrupt the electors and to defeat the public will. If the payment of a sum of money for the use of a room in which to hold a public meeting for political objects, or for the lights used thereat, or for the attendance of a person to prepare such room and keep it in proper order, is a contribution of money to promote an election, within the meaning of the statute, so is the money a man may expend upon himself in the payment of tavern bills and the expenses of transportation, in going to and returning from such meetings, equally a contribution of money to promote an election; because all such expenditures tend to the same result, and the money is disbursed for the same object, and that is to aid in the election of a particular candidate or ticket. It is not possible to discriminate between them. So that to adopt the construction claimed, is to impute to those who framed the law the most absurd intentions; or to give it an effect which they could not have contemplated. If, on the other hand, the act be interpreted to prohibit contributions in money to a common fund for the uses indicated, then it will have a rational and sensible construction, will command the respect due to sensible and practical legislation, and its effect will be to diminish, and perhaps in the progress of time, to

extinguish a practice which obtains to a greater or lesser extent during the progress of an election canvass, and which all unite in condemning as a great evil. This construction conforms to the primary and popular signification of the word contribute which is, to give in common with others to a common fund to be employed and expended for a common purpose. It will also harmonize with the spirit of the law, which is not to obstruct the diffusion of knowledge, but to suppress a positive evil. Money contributed "for defraying the expenses of printing and the circulation of votes, handbills and other papers," is expressly excepted from the prohibition of the act. And this exception affords a clear indication that it was not intended to interfere with public examination and discussion, or impede in any manner the distribution of printed matter, or the diffusion of knowledge. Funds contributed by the members of a political party upon the eve of an election are quite likely to be devoted to questionable and reprehensible uses; to purposes of demoralization and corruption, and thus to defeat a free and fair expression of the popular will. The contribution and collection of such funds, for such purposes, justly deserve the censure and condemnation of a wise and virtuous community. Buildings, tents or other structures, however, appropriated to the uses of political meetings, are not obnoxious to any such objection. Dedicated and used as forums of debate and public discussion where the policy of the government, its legislative and administrative action, and other kindred subjects are argued and examined, they can hardly be misappropriated. And although the argument and discussion may be exclusively partizan, and exhibit but a single side of a public measure, it would be vain to deny that they do not awaken and stimulate inquiry, and diffuse to some extent the knowledge and instruction essential to an enlightened public judgment. In a government of opinion, whatever tends to this result, if otherwise innocent, deserves encouragement and commendation. And the legislature are not to be supposed to have intended by a penal statute to interfere with this lib-

erty of free discussion, unless its language should admit of no other sensible construction.

The judgment of the county court should be affirmed.

[ORANGE GENERAL TERM, September 14, 1858. *S. B. Strong, Emott* and *Brown,* Justices.]